1     HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
8                      AT TACOMA

9     ANDREW HENDRICKS, BETHEL          CASE NO. C13-5690 RBL
      PRESCOTT,
                                        ORDER GRANTING IN PART AND
10                 Plaintiffs,          DENYING IN PART DEFENDANTS'
                                        MOTION TO DISMISS
11           v.
                                        [Dkt. #15]
12    PIERCE COUNTY, et al.,

13                 Defendants.

14

15        THIS MATTER is before the Court on Defendants' Fed. R. Civ. P. 12(b)(6) Motion to

16    Dismiss. [Dkt. #15].  Plaintiffs Hendricks and Prescott are journalists and members of an activist

17    anti-war group, the Port Militarization Resistance (PMR).  They claim they were unlawfully

18    harassed, threatened, and seized by Pierce County Sheriff's Deputies who stopped them from

19    filming and taking photographs in the courthouse, in what they claim was a coordinated attempt

20    to deter Plaintiffs' First Amendment activities. They assert various constitutional and state law

21    claims against the deputies and their superiors, and a *Monell* claim against Pierce County.

22        Defendants argue that Plaintiffs have not plausibly pled viable First, Fourth, or 14th

23    Amendment claims against the Defendant deputies.  They also claim that Plaintiffs have not

24    plausibly alleged sufficient facts to support their supervisor claims based on the personal

1    involvement of the Defendants Adamson or Pastor, or sufficiently plead a claim of municipal

2    liability.

3    **I. BACKGROUND**

4        Plaintiffs allege[1] that, in their role as journalists, they attended Pierce County Superior

5    Court proceedings, as part of their ongoing efforts to document police retaliation against people

6    who videotape police abuse in public places.  As members of the PMR, Plaintiffs also oppose the

7    work of the Regional Intelligence Groups (RIGs).  The RIGs are part of the Washington Fusion

8    Center, which works to detect and prevent acts of terrorism.  Plaintiffs allege these organizations

9    spy on activists and gather intelligence in order to catalog, disrupt, and prevent them from

10   engaging in First Amendment activity—including observing and reporting on police interactions

11   with like-minded individuals.  Two of the RIGs are directed by Defendant Adamson, who is also

12   a supervisor in the Pierce County Sheriff's Office.  Defendants Boyle and Villahermosa are the

13   Pierce County Deputies who actually interacted with Plaintiffs at the courthouse.

14       On August 10, 2010, Plaintiffs attended the arraignment of a man they believed was a

15   victim of police and corporate retaliation, and who also filmed police abuse in public places.

16   Plaintiff Hendricks entered the courtroom and noticed three individuals filming the arraignment,

17   and another person taking photographs, who told Hendricks he was a journalist.  Hendricks also

18   started filming.  After he filmed for 12 to 15 seconds, Pierce County Deputy Boyle told him that

19   cameras were not allowed in the courtroom.  Hendricks stopped recording, turned off the camera,

20   and placed it on his hip.  Hendricks pointed out that other people were filming in the courtroom.

21   Boyle replied that they were media professionals, and Hendricks told him he too was a journalist.

22   A few minutes later, Deputy Villahermosa approached Hendricks and asked him to step out of

23   

24       [1] The facts are taken from the Plaintiffs' Complaint.

1   the courtroom with him.  Hendricks declined and Villahermosa said he must accompany him

2   outside to avoid disrupting the court.  Villahermosa told him he was not being arrested, but that

3   he was being detained.

4         Outside the courtroom three or four deputies joined Villahermosa, surrounding

5   Hendricks.  Villahermosa asked Hendricks for his identification; Hendricks refused, and

6   Villahermosa threatened to arrest him for obstruction.  Hendricks then produced his

7   identification.  Villahermosa told Hendricks he was acting like a terrorist and that people who

8   conduct surveillance are potential threats to security.  Hendricks alleges that Villahermosa

9   deliberately kept him in the hall until the proceeding was essentially over.

10        Plaintiff Prescott had followed Hendricks and Villahermosa out of the courtroom and sat

11  five feet away to watch the interaction.  When she picked up her own camera, Boyle approached

12  and told her photography was not allowed in the building.  Boyle continued talking to her after

13  she put her camera down.  Prescott alleges that Boyle deliberately prevented her from observing

14  the deputies' interactions with Hendricks.

15        The next day, Prescott was watching a criminal defense trial involving the "necessity"

16  defense in another courtroom.  The Judge in that case expressly allowed cameras, but Prescott

17  did not use a camera in the courtroom or hallway.  Villahermosa approached Prescott and three

18  friends in the hallway in what Prescott felt was a rapid and threatening manner, and asked why

19  she had a camera.  Villahermosa got close and told Prescott, in a loud and threatening manner,

20  that he had already told her that cameras were not allowed in the building.  She told him that her

21  camera was off, that the lens cap was on, and that she was not planning on taking any

22  photographs in the courthouse.  This conversation continued until Prescott declared that she was

23  finished with the conversation and walked away.

24

1    As a result of these encounters, Prescott and Hendricks sued Deputies Boyle and

2    Villahermosa, Lieutenant Adamson, Sheriff Pastor, Pierce County, and the Washington Fusion

3    Center.  They assert 42 U.S.C. § 1983 claims for violations of their First, Fourth, Eighth, and 14th

4    Amendment rights, as well as state law claims for negligence, outrage, and violations of Article

5    1, Section 5 of the Washington Constitution.

6    Specifically, Plaintiffs sued the deputies for (a) violations of their First Amendment

7    rights based on their rights of free exercise and free expression as journalists; (b) use of

8    excessive force, unreasonable search and seizure, and false detention and imprisonment in

9    violation of their Fourth Amendment rights; and (c) Fourteenth Amendment violations of the

10   equal protection and substantive due process clauses.  They sued Lieutenant Adamson for

11   orchestrating and encouraging the deputies' unlawful conduct. They sued Pierce County for

12   failure to train, discipline, and supervise its employees.  They assert similar claims against

13   Pastor.

14   Defendants seek dismissal of all of these claims. They argue that Plaintiffs have not pled

15   and cannot plausibly plead viable claims for violations of their First, Fourth, or 14th Amendment

16   rights.  Defendants' motion argues that Plaintiffs have failed to plausibly allege a custom or

17   policy, or allege facts supporting the actionable involvement of supervisors.[2]

18

19   ───────────────────────

20   [2] Plaintiffs concede that their Eighth Amendment claim and their state law claims for negligence and
     intentional infliction of emotional distress should be dismissed.  [Dkt # 28].  Defendants' Motion to Dismiss these
     claims is GRANTED.

21   Plaintiffs also "concede that [they] may not have a cognizable class under the 14th Amendment."  [Dkt #
     28].  Plaintiffs have not plausibly pled facts to support membership in a protected class.  Defendants' Motion to

22   Dismiss these claims is GRANTED.

     There is not a private right of action for damages under Article 1, Section 5 of the Washington State

23   Constitution, a point the Plaintiffs concede.  "Washington courts have consistently rejected invitations to establish a
     cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation[.]'"
     *Sys. Amusement Inc. v. State*, 7 Wash. App. 546, 517, 500 P.2d 1253 (1972).  Defendants' Motion to Dismiss

24   Plaintiffs' claims for violations of Article I, Section 5 of the Washington Constitution is GRANTED.

1

## II.    DISCUSSION

2

### A.    Fed. R. Civ. P. 12(b)(6) Standard.

3       Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

4  theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*

5  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must allege facts to state

6  a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A

7  claim has "facial plausibility" when the party seeking relief "pleads factual content that allows

8  the court to draw the reasonable inference that the defendant is liable for the misconduct

9  alleged." *Id.* at 678.  Although the Court must accept as true a complaint's well-pled facts,

10  conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

11  Rule 12(b)(6) motion.  *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.*

12  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[A] plaintiff's obligation to provide

13  the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

14  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

15  enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550

16  U.S. 544, 555 (2007) (citations and footnote omitted).  This requires a plaintiff to plead "more

17  than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678

18  (citing *Twombly*).

19       On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

20  amend the pleading was made, unless it determines that the pleading could not possibly be cured

21  by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

22  247 (9th Cir. 1990).  However, where the facts are not in dispute, and the sole issue is whether

23

24

1  there is liability as a matter of substantive law, the court may deny leave to amend.  *Albrecht v.*

2  *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

3  **B.    Plaintiffs' First Amendment Claims.**

4          Plaintiffs allege multiple variations of First Amendment claims.  They argue that the

5  Defendant deputies violated their right to free expression and to "exercise" their rights as

6  journalists when they allegedly harassed and seized them.  They also claim they had a "journalist

7  privilege" that gives their activities heightened protection.

8          Defendants argue that Plaintiffs have failed to plausibly allege that the deterrence of

9  Plaintiffs' political speech was a substantial or motivating factor in Defendants' conduct, and

10  that Plaintiffs' reliance on the "journalist privilege" is misplaced.  They point out that Plaintiffs

11  do not have a constitutional right to use cameras in the courtroom and that a court rule

12  reasonably requires the media to obtain the judge's permission before using a camera in the

13  courtroom. They also argue that Plaintiffs have not shown that their access to the courts was

14  denied.

15          The issue is whether Plaintiffs have plausibly pled a viable claim that the deputies

16  retaliated against them in order to stop and deter them from engaging in the exercise of their First

17  Amendment right to political free speech.

18          The parties agree that "in order to demonstrate a First Amendment violation, a plaintiff

19  must provide evidence showing that by his actions the defendant deterred or chilled the plaintiff's

20  political speech and such deterrence was a substantial or motivating factor in the defendant's

21  conduct." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)

22  (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).  A Plaintiff "may not recover

23  merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement

24  initiatives." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) *cert. denied,* 479 U.S.

1054 (1987).  The Defendant's intent is a required element of the claim.  *Mendocino Env'l Ctr. v. Mendocino Cnty.,* 14 F.3d 457, 464 (9th Cir. 1994).  Allegations of "discrete acts of police surveillance and intimidation directed solely at silencing" a citizen will survive a motion to dismiss. *Gibson,* 781 F.3d 1334, 1338.

1. <u>Hendricks' free speech claim against Villahermosa.</u>

Hendricks' primary, and strongest, claim is that Deputy Villahermosa (and later three or four other officers) deliberately detained him outside of the courtroom until the proceeding was essentially over.  Hendricks' claim that they did so in order to prevent him from witnessing or documenting the proceeding is plausible.  The deputies' claim that they detained Hendricks outside to avoid disrupting the proceedings does not establish that they had a right to detain him in the first place.  Hendricks claims that he had already turned off the camera.  Under *Mendocino*, Hendricks has pled sufficient facts that Defendants' conduct deterred his political speech and that such deterrence was a substantial or motivating factor in that conduct.  Defendants' Motion to Dismiss Hendricks' First Amendment claim against the deputies based on this encounter is DENIED.

2. <u>Prescott's free speech claim against Boyle.</u>

Prescott's First amendment claim is similarly based on her claim that she is a journalist involved in the documentation of police retaliation against individuals who videotape police abuse in public places. She claims that Boyle violated her rights during each of his interactions with her.

*Mendocino* requires Prescott to plausibly plead that Boyle deliberately prevented her from watching and documenting the interaction between Hendricks and the deputies.  Prescott claims that Boyle blocked her line of sight, and insisted on talking to her so that she could not hear Villahermosa's simultaneous conversation with Hendricks, and that he did so even after she

1   put her camera away.  Prescott's claimed status as a journalist does not give her the unfettered

2   right to document, or even watch, any interaction she desires, and she has not plausibly plead

3   that it does.  Unlike Hendricks, Prescott does not claim that she was actually detained.  Prescott's

4   claim that Boyle's acts deterred her political speech and that such deterrence was as substantial

5   or motivating factor in the Defendants' conduct is not plausible, on the facts she has alleged.

6   Defendants' Motion to Dismiss Prescott's First Amendment claim against Boyle is GRANTED

7   and those claims are DISMISSED, with prejudice.

8       3.   Plaintiffs' "journalist privilege" claims against both deputies.

9           Both Plaintiffs also assert "journalist privilege" First Amendment claims. The gist of

10   these claims seems to be that as journalists, they have enhanced First Amendment rights to

11   document court proceedings, or to not be spoken to if they do so in violation of a court rule.

12   Defendants argue that the journalist privilege does not apply to this case.

13           Plaintiffs' attempt to shoehorn a plain vanilla free speech claim into an enhanced

14   "journalist privilege" claim is not effective.  Plaintiffs' claim relies on *In re Madden*. 151 F.3d

15   125 (3d Cir. 1998).  But the "journalist privilege" described in *Madden* is a "qualified privilege

16   against compelled disclosure" of a journalist's sources or information, not a constitutional right.

17   *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998); s*ee also Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th

18   Cir. 1993) (The journalist's privilege is a partial First Amendment shield "that protects

19   journalists against compelled disclosure in all judicial proceedings, civil and criminal alike.").

20           Plaintiffs have not claimed that any Defendant sought the compulsion of their sources, or

21   even their work product.  Plaintiffs' "journalist privilege" claim is not plausible. The

22   Defendants' Motion to Dismiss this claim is GRANTED, and it is DISMISSED, with prejudice.

23

24

**C.    Plaintiffs' Fourth Amendment Claims.**

Plaintiffs claim that the deputy Defendants used threats of force and arrest to detain them without any basis in violation of their Fourth Amendment rights.  Hendricks specifically claims Villahermosa unlawfully seized and detained him when he required him to exit the courtroom and three or four other deputies surrounded him, threatening and intimidating him.  Prescott alleges Boyle and Villahermosa unlawfully seized and detained her when they individually approached her to discuss the use of her camera in the courthouse.  Both Plaintiffs also claim that the deputies used excessive force in detaining them.  Defendants argue that all of Plaintiffs' Fourth Amendment claims should be dismissed because the deputies did not seize Plaintiffs and the actions of the deputies were objectively reasonable.  Defendants also argue that Plaintiffs have not pled that the deputies used any force at all.

1.    Plaintiffs' unreasonable seizure and false detention claims.

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."  *United States v. Mendehall*, 446 U.S. 544, 553 (1980).  In order for "seizure" to have occurred, there must either be some application of physical force, even if extremely slight, or a show of authority to which the subject yields.  *California v. Hodari D.*, 499 U.S. 621, 625 (1991).  An officer may seize a suspect without making physical contact.  *United States v. Manzo-Jurado*, 457 F.3d 928, 933-34 n.3 (9th Cir. 2006).  When determining whether a reasonable person would feel he was free to leave, a court may look at the "threatening presence of several officers; the display of a weapon; the physical touching of the person by the officer; [and the] language or tone indicating that compliance with the officer was compulsory[.]"  *United States v. Glover*, 957 F.2d 1004, 1008 (2d. Cir. 1992).

The Constitution does not forbid all searches and seizures, but rather *unreasonable* searches and seizures.  *Terry v. Ohio*, 392 U.S. 1, 9 (1968). In determining the reasonableness of

the seizure, courts balance "on the one hand the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it is needed for the promotion of legitimate governmental interest. *Virginia v. Moore*, 553 U.S. 164, 164 (2008) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

> a.    *Hendricks' unlawful seizure and detention claim against Villahermosa.*

Hendricks' Fourth Amendment claim against the deputies is related to his First Amendment claim, arising from the same incident.  Hendricks claims that Villahermosa and three or four deputies unlawfully seized and detained him.  Hendricks' claim plausibly alleges that he felt he had no choice but to accompany Villahermosa into the hall; that he reasonably believed he was not free to leave.  Hendricks points specifically to the deputies' show of authority through the "threatening presence of several officers… [and the] language or tone indicating that compliance with the officer was compulsory[.]"  *Glover*, 957 F.2d 1004, 1008. Hendricks claims that after he refused to leave the courtroom Villahermosa told him that he was being detained.  Three or four other deputies then surrounded Hendricks in the hallway, and that Villahermosa threatened to arrest Hendricks if he did not show his identification.  He claims that Villahermosa called him a terrorist and a threat to security.  These allegations—barely— state a plausible claim for unlawful seizure and detention against Villahermosa.  Defendants' Motion to Dismiss Hendricks' Fourth Amendment unlawful seizure and detention claims against Villahermosa is DENIED.  If and to the extent he asserts a similar claim against other, unidentified deputies who "assisted" Villahermosa, those claims are DISMISSED.

> b.    *Prescott's unlawful seizure and detention claims against Villahermosa and Boyle.*

Prescott's Fourth Amendment unlawful seizure and detention claims against Villahermosa and Boyle are similar to her First Amendment claims, arising from the same

1    incidents.  Prescott's claims are based on two incidents. In the first incident, Prescott alleges that

2    Boyle deliberately blocked her view of the deputies' interaction with Hendricks to stop her from

3    documenting the interaction.

4          In the second incident, Prescott alleges Villahermosa approached Prescott and her three

5    companions and spoke to them, in what she claims was a loud and threatening manner, about the

6    use of her camera.  In both events pled a reasonable person could conclude she was free to leave.

7    *Mendehall*, 446 U.S. 544.  Unlike Hendricks, Prescott does not claim that she faced multiple

8    officers, or the threat of arrest.  She does not claim that she was told, or even that she felt, she

9    could not leave.  To the contrary, in the second incident she admits she *did* leave, without

10   consequence.  *See Glover*, 957 F.2d 1004, 1008.  These facts do not amount to a Fourth

11   Amendment claim for unlawful seizure or detention, as a matter of law.

12         Defendants' Motion to Dismiss Prescott's Fourth Amendment seizure and detention

13   claims against both deputies is GRANTED, and those claims are DISMISSED with prejudice.

14   2.    Plaintiffs' excessive force claims against both deputies.

15         Both Plaintiffs also allege that both deputies used excessive force.  The reasonableness of

16   force used to apprehend a suspect is determined by "carefully balancing the nature and quality of

17   the intrusion on the individual's Fourth Amendment interests against the countervailing

18   governmental interests at stake."  *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir.2001)

19   (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)).  The reasonableness of force used must be

20   considered "from the perspective of a reasonable officer on the scene, rather than with the 20/20

21   vision of hindsight."  *Id.*

22         Neither plaintiff has pled that any force was used, at all.  Defendants' Motion to Dismiss

23   Plaintiffs' Fourth Amendment claims is GRANTED, and Plaintiffs' excessive force claims are

24   DISMISSED with prejudice.

**D.    Plaintiffs' Fourteenth Amendment Due Process Claims.**

Both Plaintiffs also bring separate 14th Amendment due process claims, arising from this same set of facts.  Plaintiffs claim that the deputies engaged in extreme and highly inappropriate behavior when they deliberately detained and harassed the Plaintiffs.  Defendants argue that the due process claims are indistinguishable from the First and Fourth Amendment claims and that the deputies' alleged conduct does not "shock the conscience," as a matter of law.

Where the text of a particular Amendment clearly provides the basis of a constitutional protection, Plaintiffs must rely on that Amendment. Substantive due process is not a separate "catch all" constitutional protection. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994).  The Plaintiffs have asserted claims under the First and Fourth Amendments.  They serve as explicit textual sources of constitutional protection from governmental interference.  Further, in order to prevail on a substantive due process claim, the government official's conduct must exercise "the most egregious official conduct," such that their actions "shock the conscience." *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  While Hendricks has, narrowly, plausibly pled that his First Amendment rights were chilled and that he was unlawfully detained in violation of his Fourth Amendment rights, the facts do not support an additional claim of egregious conduct that shocks the conscience, as a matter of law.   Defendants' Motion to Dismiss Plaintiffs' 14th Amendment due process claims is GRANTED and those claims are DISMISSED with prejudice.

**E.    Plaintiffs' Supervisor Liability Claims.**

Hendricks[3] claims that Adamson and Pastor were personally involved in the deprivation of his First and Fourth Amendment rights[4] by creating and implementing a policy to threaten,

---

[3] Both Plaintiffs have asserted supervisor liability and *Monell* claims.  However, all of Prescott's claims have been dismissed as a matter of law.  A constitutional violation is a predicate to any supervisor liability or *Monell* claim. *See e.g., Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

1    intimidate, and detain activists (him) in order to prevent them from exercising their First

2    Amendment rights.  He also broadly claims that Adamson failed to train, supervise, and

3    discipline the deputies when they did so.

4         Hendricks similarly claims that Pastor had personal knowledge of the acts, and that he

5    too failed to train, supervise, and discipline the officers.  Defendants argue that these claims

6    actually defective claims for respondeat superior liability, and that Hendricks cannot plausibly

7    plead facts to support the supervisors' personal involvement in any alleged constitutional

8    deprivation.

9         A plaintiff may state a supervisor liability claim against a supervisor for deliberate

10   indifference "based upon the supervisor's knowledge of and acquiescence in unconstitutional

11   conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.2011).  A

12   supervisor is only liable for the constitutional violations of his or her subordinates if (1) the

13   supervisor participated in or directed the violations; or (2) knew of the violations and failed to act

14   to prevent them. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

15        Personal participation is required to establish liability under §1983. *Taylor,* 880 F.2d at

16   1045.  Liability is imposed for the supervisor's "own culpable action or inaction in the training,

17   supervision, or control of his subordinates," *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987),

18   or for conduct that showed a "reckless or callous indifference to the rights of others." *Bordanaro*

19   *v. McLeod*, 871 F.2d 1151, 1163 (1st Cir. 1989).  To impose supervisory liability for failure to

20   train, the supervisor must have been "deliberately indifferent" to the need for "more or different

21   training."  *Clement v. Gomez*, 198 F.3d 898, 905 (9th Cir. 2002).

22   _____

23        [4] Hendricks' 14th Amendment claim is not meritorious, and is dismissed above.  His
     "supervisor liability" claims, necessarily based on the viability of this claim, is similarly without

24   merit, and is DISMISSED.

1.    <u>Hendricks' supervisory liability claims against Adamson.</u>

Hendricks alleges that Adamson was directly involved in the constitutional deprivation of his rights, and that he did so deliberately.  Hendricks specifically alleges that Adamson, as the Director of two of the RIGs and a supervisor in the Pierce County Sheriff's Office, created and implemented the inter-agency policy that led to the violation of his First and Fourth Amendment rights.  He also alleges that Adamson identified the members of the PMR and that he encouraged the deputies to act unlawfully.

Hendricks' has plausibly pled that Adamson was personally involved by aiding and directing the constitutional violations. *See Starr,* 652 F.3d at 1207–08.  Defendants' Motion to Dismiss Hendricks' supervisory liability claim against Adamson is DENIED.

2.    <u>Hendricks' supervisory liability claims against Pastor.</u>

In contrast, Hendricks' claim that Pastor was personally involved in the creation and implementation of this policy is not plausible.  Hendricks has made only a general, entirely conclusory allegation that Pastor had any personal participation in the constitutional deprivations.  Hendricks implicitly admits as much by focusing instead on his (also conclusory) allegation that Pastor failed to train and supervise his deputies—which is inconsistent with the claim that he personally participated in the constitutional deprivations. Hendricks has not plausibly pled that Pastor participated in or directed the violations.

But Hendricks' claim that Pastor failed to train, supervise, or discipline the officers is also insufficient as a matter of law.  Hendricks has not alleged who Pastor failed to train, supervise, or discipline, or how they should have been trained, supervised, or disciplined instead.  Nor has Hendricks plausibly plead that Pastor had a deliberate indifference to train, supervise, or discipline.

Hendricks claims that if his claims against Pastor are insufficient, he is prepared to supplement his allegations with specific facts.  It is perhaps possible that he could state a plausible claim that Pastor is liable for the constitutional deprivations described above (First and Fourth amendment claims, based on the incident at the courthouse).  Hendiricks and he is granted LEAVE TO AMEND his complaint to do so, on this limited claim only.

**F.    Hendricks' Claims Against Pierce County.**

Hendricks similarly claims that Pierce County created and implemented an unlawful policy and failed to train, supervise, and discipline its officers.  Pierce County argues that Hendricks has not identified a formal policy, a longstanding practice or custom, or pled any facts to support a plausible claim that the County was deliberately indifferent, or failed to supervise, discipline, or train its officers.

1.    Hendricks' *Monell* claim against Pierce County.

A municipality cannot be held liable under § 1983 for its employees' actions on a theory of respondeat superior.  *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 691(1978).  For a municipality to be liable under § 1983, a plaintiff must prove that: (1) a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (2) the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an action of official governmental policy; or (3) an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir.1992).

While Hendricks has not alleged a formal municipal policy, he has alleged a longstanding practice or custom that he asserts constitutes a standard operating procedure.  He alleges that

Adamson and Pastor created and implemented an inter-agency policy to identify members of the PMR and threaten, intimidate, and detain them in order to prevent the activists from exercising their First Amendment rights.  Even though the three factual events Hendricks pled occurred on two consecutive days and involved the same two officers, Hendricks has pled enough to survive this Motion to Dismiss.   Defendants' Motion to Dismiss the Monell claim—again, limited to the two constitutional calims that have survived this motion—is DENIED.

2.   Hendricks' failure to train, discipline, or supervise claim against Pierce County.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1359 (2011). In "virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. 378, 392 (1989) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)).  A municipality may be held liable for its failure to act only when its deliberate indifference led to an omission that caused an employee to commit the constitutional violation. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).  "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Farmer*, 511 U.S. at 841.

Hendricks has claimed that Pierce County failed to properly train, supervise, and discipline its officers.  However, he has not pled any facts to support this conclusory allegation. As was the case with Pastor, Hendricks has not specified how Pierce County failed to train, supervise, or discipline its officers, or how they should have been so trained.   Hendricks is granted LEAVE TO AMEND to plead specific facts to support his failure to train, discipline, and

1   supervise claim against Pierce County.  Again, this amendment may relate only to the limited,

2   surviving constitutional violation claims.

3                                   **III. CONCLUSION**

4         Defendants' Motion to Dismiss [Dkt. #15] is GRANTED IN PART AND DENIED IN

5   PART, as follows:

6   - Eighth Amendment cruel and unusual punishment claims—**GRANTED;**
    - Negligence claims—**GRANTED;**
7   - Outrage claims—**GRANTED;**
    - 14th Amendment equal protection claims against deputies —**GRANTED;**
8   - Washington State Constitution Article I, Section 5 claims—**GRANTED;**
    - Hendricks' First Amendment free speech claim against Villahermosa—**DENIED;**
9   - Prescott's First Amendment free speech claim against Boyle —**GRANTED;**
    - Plaintiffs' First Amendment "journalist privilege" free exercise claims against
10    deputies —**GRANTED;**
    - Hendricks' Fourth Amendment unreasonable seizure and ]detention claims
11    against Villahermosa—**DENIED;**
    - Prescott's Fourth Amendment unreasonable seizure and false detention claims
12    against Boyle and Villahermosa—**GRANTED;**
    - Plaintiffs' Fourth Amendment excessive force claims against deputies —
13    **GRANTED;**
    - Plaintiffs' 14th Amendment due process claims against deputies —**GRANTED;**
14  - Prescott's supervisor liability claims against Adamson— **GRANTED;**
    - Prescott's supervisor liability claims against Pastor— **GRANTED;**
15  - Prescott's *Monell* claim against the County based on policy— **GRANTED;**
    - Prescott's *Monell* claim against the County based on failure to train, supervise, or
16    discipline— **GRANTED.**
    - Hendricks' supervisor liability claims against Adamson— **DENIED;**
17  - Hendricks' supervisor liability claims against Pastor— **LEAVE TO AMEND;**
    - Hendricks' *Monell* claim against the County based on policy— **DENIED;**
18  - Hendricks' *Monell* claim against the County based on failure to train, supervise, or
    discipline— **LEAVE TO AMEND.**
19

20  IT IS SO ORDERED.

21  Dated this 19th day of March, 2014.

22

23  _____
    RONALD B. LEIGHTON
24  UNITED STATES DISTRICT JUDGE