HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDREW HENDRICKS, | CASE NO. C13-5690 RBL |
| Plaintiff, | ORDER |
| v. | DKT. #56 |
| PIERCE COUNTY et al., | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants Pierce County, Sergeant Villahermosa, Jr., and Sergeant Adamson's Motion for Summary Judgment [Dkt. #56] on Plaintiff Hendricks's four remaining claims.[1] Hendricks alleges that (1) Villahermosa violated Hendricks's free speech rights and (2) his right to be free from unreasonable seizure and detention, and that (3) Adamson is liable for his supervisory authority over Villahermosa.

---

[1] For a list of Plaintiffs Prescott and Hendricks's dismissed claims and a detailed recitation of the facts, see the Court's prior Order on Defendants' Motion to Dismiss [Dkt. #15]. The Court granted Hendricks leave to amend his supervisor liability claim against Sheriff Pastor and his *Monell* claim against the County for a failure to train, supervise, or discipline. Hendricks neither amended those claims nor sought reconsideration of the Court's Order, so they are DISMISSED WITH PREJUDICE.

ORDER - 1

(4) Hendricks also asserts a *Monell* claim against the County, arguing it is liable for the actions of its officers.

Defendants argue that they are entitled to summary judgment because (1) Villahermosa is entitled to qualified immunity on Hendricks's First and Fourth Amendment claims, (2) Adamson has no supervisor liability because no underlying constitutional violation took place and he had no supervisory authority over Villahermosa, and (3) Hendricks cannot establish the elements of a municipal liability claim against Pierce County.

## I. DISCUSSION

**A.   Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the

nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**B.      Villahermosa is Entitled to Qualified Immunity.**

Hendricks argues that Villahermosa violated his clearly established First and Fourth Amendment rights. Villahermosa counters that he is entitled to qualified immunity because he neither violated Hendricks's constitutional rights, nor was it clearly established that Hendricks had a constitutional right to remain in the courtroom unidentified after violating the court's decorum rules and threatening to do so again.

**1.      Qualified Immunity Standard.**

The qualified immunity doctrine shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151 (2001)).

Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034 (1987)). The reasonableness inquiry is objective, evaluating whether an official's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865 (1989)). Even if an official's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about

the law applicable to the circumstances was reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596 (2004). As a privilege from suit, not merely from liability, qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534 (1991) (citing *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092 (1986)).

## 2.  **First Amendment Claims.**

Hendricks argues that Villahermosa violated his right to free speech when he asked Hendricks to leave the courtroom for arguing with Deputy Boyle about whether or not he could record the court's proceedings, because he had a First Amendment right to verbally challenge the officer in the courtroom. He also claims that Villahermosa's detention of him in the hallway chilled his right to free speech because he missed the end of an arraignment that he had wanted to write about. Hendricks alleges that Villahermosa was retaliating against him for his Port Military Resistance (PMR) activism.

Villahermosa claims he is entitled to qualified immunity. He argues that he did not violated Hendricks's First Amendment rights, and that Hendricks did not have any right, much less a clearly established one, to remain in the courtroom after he had violated the court's decorum rules and seemed likely to do so again. Villahermosa also argues there is no evidence to support the claim that he removed Hendricks in order to chill his PMR political-speech because he did not know who Hendricks was, much less that he was a "journalist" or a PMR activist.

A courtroom is a nonpublic forum. *See Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997). Unruly or disruptive audience members may be removed from non-public forums to prevent badgering, interruptions, or disregard for the rules of decorum. *See Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d

1  Cir. 2004) and citing *White v. City of Norwalk*, 900 F.2d 1421, 1425-36 (9th Cir. 1990)). The
2  courthouse prohibited photography and recording without prior express judicial permission.
3        Villahermosa reasonably asked Hendricks to step into the hallway to continue their
4  discussion. By recording an arraignment without prior permission—despite the posting that he
5  was prohibited from doing so—and then arguing with Boyle and Villahermosa about whether he
6  had the right to continue recording, Hendricks plainly and admittedly disregarded the court's
7  rules of decorum. Villahermosa did not violate Hendricks's right to free speech by changing the
8  location of their discussion. Furthermore, Hendricks had no clearly established constitutional
9  right to continue arguing with Boyle and Villahermosa in the courtroom, a non-public forum.
10       Villahermosa also reasonably requested and waited for Hendricks to produce proper
11 identification. Hendricks missed the end of the arraignment because of his own delay in
12 producing valid identification, not because Villahermosa sought to chill his journalistic speech or
13 sought to retaliate against Hendricks for his activism. Indeed, Villahermosa needed to identify
14 Hendricks because he did not know who Hendricks was. And as soon as Hendricks provided
15 valid identification, Villahermosa released him.
16       Likewise, whether a journalist or not, Hendricks had no clearly established First
17 Amendment right to forgo identifying himself to the court officers with whom he had an
18 altercation so that he could later write a firsthand account of an arraignment. Identifying oneself
19 does not prohibit subsequent literary exercise.
20       Villahermosa did not violate Hendricks's clearly established First Amendment rights, and
21 so Villahermosa is entitled to qualified immunity on this claim.
22       **3.**     **Fourth Amendment Claims.**
23       Hendricks claims Villahermosa improperly detained him by asking him to leave the
24 courtroom for violating the court's general rule against recording court proceedings. He argues

this detention was unreasonable under the Fourth Amendment, because Villahermosa could not have formed a reasonable suspicion that Hendricks would continue filming. Hendricks claims Villahermosa again violated his Fourth Amendment rights when Villahermosa requested Hendricks's identification and subsequently ran a warrants check.

Villahermosa claims he is entitled to qualified immunity on Hendricks's Fourth Amendment claims because he reasonably believed Hendricks's refusal to temporarily step out of the courtroom and to identify himself obstructed his official duties. Villahermosa alleges that he reasonably asked Hendricks to exit the courtroom for violating the court's decorum rules and posing a disruptive threat to the proceedings. He also alleges that he reasonably requested Hendricks's identification because he reasonably concluded Hendricks could have been conducting pre-attack surveillance, given two recent courthouse attacks.

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. Its protections extend to brief investigatory stops falling short of traditional arrest. *See Terry v. Ohio,* 392 U.S. 1, 9, 88 S. Ct. 1868 (1968). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744 (2002) (internal citations and punctuation omitted). When an officer has a reasonable suspicion of actual or pending criminal activity, he may interrogate the suspect. *See Michigan v. Summers,* 452 U.S. 692, 700 n. 12, 101 S. Ct. 2587 (1981); *see also United States v. Christian*, 356 F.3d 1103, 1106 (9th Cir. 2004). Interrogation includes inquiring about the suspicious conduct, requesting identification, and checking for outstanding warrants or previous arrests. *See Christian*, 356 F.3d at 1107.

1    When making a reasonable suspicion determination, the Court must look at the totality
2 of the circumstances to assess whether the detaining officer had a "particularized and objective
3 basis" for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*,
4 449 U.S. 411, 417-18, 101 S. Ct. 690 (1981)). Officers may draw on their experiences and
5 specialized training to make inferences from, and deductions about, the cumulative information
6 available to them that might elude an untrained person. *See id*.

7    Villahermosa did not violate Hendricks's Fourth Amendment rights by asking him to
8 exit the courtroom after Hendricks had refused to accept Boyle's explanation for why Hendricks
9 could not record an arraignment. The totality of the circumstances demonstrates that
10 Villahermosa possessed a reasonable suspicion that Hendricks would attempt to film again and a
11 reasonable suspicion that Hendricks wanted to conduct pre-attack surveillance of the courthouse.
12 For these reasons too, Villahermosa reasonably requested Hendricks's identification and ran a
13 warrants check.

14    Furthermore, Hendricks had no clearly established constitutional right not to be briefly
15 detained for identification purposes after recording an arraignment in willful violation of the
16 court's posted rules and suggesting he would continue doing so.

17    Hendricks has attempted to turn a molehill into Mt. Constitution. Taking the evidence in
18 the light most favorable to him, the Court cannot conclude that Villahermosa violated either
19 Hendricks's First or Fourth Amendment rights.

20 **C.    Adamson has No Supervisor Liability.**

21    Hendricks argues that a jury should address whether Villahermosa acted on information
22 that Adamson supplied to him. Adamson argues that he cannot be held liable (1) because as the
23 supervisor of the Robbery Assault Gang Unit only, he had no authority over Boyle or
24

1 Villahermosa or over the County City Building's security policies, and (2) no underlying
2 constitutional violation occurred.

3 Because no underlying constitutional violation took place and because Adamson was not
4 Boyle's or Villahermosa's supervisor, Adamson has no supervisory liability as a matter of law.

**D. Pierce County is Not Liable Under a *Monell* Policy Claim for Its Officers' Actions.**

6 The County argues that Hendricks cannot support any element, let alone all elements, of
7 his claim that the County has an official policy that violates his constitutional rights. Hendricks
8 neglects to respond directly to the County's argument against his policy-based claim, instead
9 arguing that the County is liable for the actions of its officers because it failed to train them in
10 accordance with case law, state law, and the Constitution. [Dkt. #66 at pg. 29].

11 The Court granted Hendricks leave to amend to plead specific facts supporting his claim
12 for municipal liability based on a failure to train, supervise, or discipline. [Dkt. #15]. Because he
13 neither amended his complaint nor sought reconsideration, the Court dismissed that claim in
14 footnote one. Assuming Hendricks now argues that the County has a *policy* not to properly train
15 its officers, his claim fails.

16 A plaintiff may sue a municipality if the municipality's employees or agents acted
17 pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or if the
18 entity ratified its employee's unlawful conduct. *See Monell v. New York City Dep't of Soc.*
19 *Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (2000); *see also Larez v. City of Los Angeles*, 946
20 F.2d 630, 646-47 (9th Cir. 1991). A municipality may be liable for a "policy of inaction" if such
21 inaction amounts to a failure to protect constitutional rights rising to the level of deliberate
22 indifference. *See Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of*
23 *Canton v. Harris*, 489 U.S. 378, 388 (1989)). The policy of inaction "must be the result of a
24 conscious or deliberate choice to follow a course of action made from among various alternatives

by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (citations and internal punctuation omitted). Thus, in order to establish a § 1983 claim against a municipality, a plaintiff must: (1) identify a specific policy or custom; (2) demonstrate that the official or officials responsible for making policy in that area of the municipality's business sanctioned the policy; (3) demonstrate a constitutional deprivation; and (4) establish a causal connection between the custom or policy and the constitutional deprivation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915 (1988).

Hendricks cannot demonstrate that Villahermosa or Adamson violated his constitutional rights. Therefore, he cannot support an element essential for his municipal liability claim based on an amorphous County policy. *See Celotex*, 477 at 322. No genuine issue for trial exists. *See Anderson*, 477 U.S. at 250.

**E.     Housekeeping.**

Hendricks improperly presents three claims in his Response and moves for sanctions. First, his Response apparently seeks to resurrect his claims against Boyle simply by claiming "there is a sufficient legal and factual basis" to do so [Dkt. #66 at 5]. This attempt fails as a matter of law: Hendricks did not seek reconsideration of the Order dismissing those claims, and he did not seek leave to amend his Complaint to assert some variation of them.

Second, Hendricks claims that the Defendants violated his rights under the Washington State Constitution, Article 1, Section 7 [Dkt. #66 at 19]. He only pleaded a violation of his rights under Section 5, which the Court dismissed. A party may only serve amended or supplemental pleadings on motion with reasonable notice to the Court. *See* Fed. R. Civ. P. 15(a), (d). Hendricks neither requested the Defendants' nor the Court's permission to amend or supplement his pleading. He therefore cannot assert a new claim in his Response as a matter of law. *See id.*

1     Third, Hendricks asserts that even though they did not arrest him, the Defendants violated his Fifth Amendment rights by allegedly coercing him to produce identification [Dkt. #66 at 5]. Hendricks's Complaint failed to state this claim clearly in a separate paragraph in violation of Fed. R. Civ. P. 10(b) [Dkt. #1]. To the extent that the Court did not notice or previously address this claim, it does so now under F.R.C.P. 60(a). Hendricks failed to plead how disclosing his name presented any reasonable danger of incrimination, especially considering the court officers never arrested him—a necessary element of his claim. *See Hiibel v. Sixth Judicial Dist. Court of NV, Humboldt Cty.*, 542 U.S. 177, 189-91, 124 S. Ct. 2451 (2004). Because he failed to plead a necessary element, this Fifth Amendment claim is DISMISSED WITH PREJUDICE.

    Finally, Hendricks requests that the Court sanction Defendants "for filing a frivolous [summary judgment] motion under F.R.C.P. 11." [Dkt. #66]. Hendricks violated Fed. R. Civ. P. 11(c)(2) by not making this motion separately from his Response. In their Reply, Defendants ask the Court to award them reasonable expenses and fees incurred in responding to Hendricks's motion for sanctions. The Court DENIES the parties' motions.

## II.    CONCLUSION

    Defendants' Motion for Summary Judgment [Dkt. #56] is GRANTED. The case is DISMISSED.

    IT IS SO ORDERED.

    Dated this 15th day of October, 2015.

*/s/ Ronald B. Leighton*
Ronald B. Leighton
United States District Judge